EDDIE LAMONT VIRGIL,

        Petitioner,

v.                                                                    Case No. 23-cv-0824-bhl

ROBERT MILLER,[1]

        Respondent.

## ORDER DENYING §2254 HABEAS PETITION

On November 21, 2018, a jury convicted Petitioner Eddie Lamont Virgil of six felony and five misdemeanor charges related to his repeated violations of a domestic abuse restraining order. (ECF No. 13-1.) After unsuccessfully challenging his convictions in state court, Virgil filed a petition for writ of habeas corpus in this Court, asserting five grounds for relief. (ECF No. 1.) Virgil's first four grounds allege that his trial counsel was constitutionally ineffective. (*Id.* at 6–9.) His fifth ground asserts a due process violation based on the sufficiency of the evidence against him. (*Id.* at 10.) Because Virgil has not established that he is entitled to habeas relief on any ground, his petition will be denied.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

In April 2018, Virgil was charged in Milwaukee County Circuit Court with six counts of felony bail jumping, six counts of knowingly violating a domestic abuse injunction, two counts of disorderly conduct, and one count each of stalking, criminal trespass, battery, and criminal damage to property. (ECF No. 13-3 at 2.) The charges stemmed from Virgil's relationship with J.B., a woman he had dated for six months until she ended the relationship. (*Id.*) On December 16, 2017, J.B. obtained a temporary restraining order barring Virgil from threatening, visiting, or contacting

---

[1] Virgil is currently incarcerated at Racine Correctional Institution, where Robert Miller serves as Warden. Accordingly, Miller is the proper Respondent for Virgil's habeas petition. *See* Rule 2(a) of the Rules Governing §2254 Petitions; Fed. R. Civ. P. 25(d).

[2] In deciding a habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. §2254(e)(1). The petitioner has the burden of rebutting that presumption by "clear and convincing evidence." *Id.* The background facts are based on the Wisconsin Court of Appeals' decision summarily affirming Virgil's convictions. (ECF No. 13-3.)

J.B.  (*Id.*)  Virgil did not abide by the terms of the TRO, and, on January 2, 2018, the state court issued an injunction barring him from engaging in the same conduct for a four-year period.  (*Id.*)  In the three months that followed, J.B. reported repeated violations of the injunction to the police and the State ultimately filed criminal charges against Virgil.  (*Id.*)

The criminal case against Virgil proceeded to trial.  At the start of trial, the parties stipulated to facts establishing the first two elements of the bail jumping charges.  (*Id.*)  In a written stipulation signed by the State, Virgil, and his attorney, the parties agreed that: "On every date between May 6, 2017 and March 15, 2018, the Defendant, Eddie Virgil, having been charged with a felony offense, had been released from custody under Chapter 946.49(1)(b), with a condition that he not commit any crime."[3]  (*Id.* at 2–3.)

The State introduced testimony from Officer Wayne Young, who described how he and his partner, Officer Gary Inman, had responded to J.B.'s home on the morning of December 27, 2017.  (*Id.* at 3.)  He explained he saw Officer Inman personally serve Virgil with the TRO.  (*Id.*)  The State also called J.B., who testified to the threats she had received from Virgil and his repeated attempts to contact her.  (*Id.*)  During J.B.'s testimony, the State introduced two exhibits containing over 100 pages of screenshots from J.B.'s phone showing messages from Virgil.  (*Id.*)  J.B. confirmed she had received the messages on her phone and explained she knew they were sent by Virgil because they came from phone numbers he had previously used.  (*Id.*)

After the State's evidence, Virgil declined to testify on his own behalf, and the court questioned him to confirm he wished to waive his right to testify.  (*Id.*)  During this questioning, Virgil expressed an objection to the bail jumping stipulation, suggesting that the word "every" implied that he had been charged with a felony on every day between May 6, 2017 and March 15, 2018.  (*Id.*)  To resolve this concern, the parties created a revised version, removing the word "every."  (*Id.*)  They then all signed the new version and included it in the jury instructions.  (*Id.*)

During deliberations, the trial court asked the parties if they would object to any jury requests to view exhibits.  (*Id.*)  Virgil's counsel objected, noting that none of the exhibits had been published to the jury.  (*Id.* at 3–4.)  The trial court overruled the objection, and, when the jury later requested them, supplied all the exhibits to the jury.  (*Id.* at 4.)

---

[3] Virgil had been charged with two felonies, cocaine possession and possession of a firearm by a felon on May 6, 2017.  *State v. Virgil*, No. 2017CF002136, Milwaukee Cnty. Cir. Ct., wcca.wicourts.gov.  He eventually pleaded guilty to both charges.  *Id.*

The jury found Virgil guilty on eleven counts, including the stalking charge, five bail jumping charges, and five charges for knowingly violating a domestic abuse injunction, but acquitted him on seven other counts. (*Id.*) The court sentenced him to six years of initial confinement followed by eight years of extended supervision. (*Id.*)

Virgil then filed a *pro se* motion for postconviction relief, alleging that his trial counsel was ineffective in multiple respects. (*Id.*) He also argued that there was insufficient evidence to support his convictions and that the trial court erred by allowing the jury to view several exhibits during deliberations. (*Id.*) The postconviction court denied Virgil's motion without a hearing, and Virgil appealed. (*Id.*)

In a February 1, 2022 order, the Wisconsin Court of Appeals summarily affirmed Virgil's convictions and affirmed the trial court's denial of his motion for postconviction relief. (*Id.* at 1–10.) The Court of Appeals rejected all of Virgil's ineffective assistance claims, concluding that Virgil's counsel had not been deficient under the constitutional standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). (*Id.* at 5–8.) The court also rejected Virgil's other claims. (*Id.* at 8–10.) Virgil petitioned the Wisconsin Supreme Court for review on March 7, 2022 but review was denied on June 22, 2022. (ECF No. 13-4 at 1, 169.)

On June 21, 2023, Virgil filed a petition for habeas corpus under 28 U.S.C. §2254, asserting five grounds for relief. (ECF No. 1.) After the Court screened Virgil's petition, (ECF No. 9), Respondent filed a Response on August 8, 2023. (ECF No. 13.) On September 26, 2023, Respondent filed a partial motion for judgment on the pleadings, arguing that Virgil's first four habeas grounds were procedurally defaulted. (ECF Nos. 18 & 19.) On August 22, 2024, the Court denied Respondent's motion, (ECF No. 31), and the case proceeded to briefing on the merits of Virgil's petition.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's ability to grant habeas corpus relief. To obtain relief under AEDPA, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011) (quoting 28 U.S.C. §2254(a)). With respect to a claim adjudicated on the merits in state court, a habeas petition can be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). It is intentionally very difficult to meet. *See Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

A state court decision is "contrary to . . . clearly established Federal law" within the meaning of §2254(d)(1) if the state court "applie[d] a rule different from the governing law set forth" by Supreme Court precedent or when the state court "decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). A state court decision involves an "unreasonable" application of established precedent within the meaning of §2254(d)(1) when the "state court identifies the correct governing legal principle . . . but unreasonably applies it to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Under either prong, it is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

## ANALYSIS

Virgil asserts five grounds for habeas relief. His first four grounds allege that his trial counsel was constitutionally ineffective because he: (1) failed to object to the "improper use" of the bail jumping stipulation; (2) did not impeach Officer Young concerning service of the TRO; (3) failed to object to the messages introduced during J.B.'s testimony; and (4) did not object to an affidavit of service of the TRO. (ECF No. 1 at 6–9.) Virgil's fifth and final claim is that he was convicted on insufficient evidence. (*Id.* at 10.) Respondent argues that Virgil is not entitled to habeas relief because Ground Two is unexhausted, Grounds Three and Four were decided on state law grounds, and Grounds One and Five are meritless. (ECF No. 38 at 6–18.) Respondent also

notes that Virgil argues a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) in his briefing, but did not raise that ground in his petition or in state court. (*Id.* at 18.) Because Virgil has not shown that he is entitled to habeas relief, his petition will be denied.

I. **Virgil's Ineffective Assistance of Counsel Claims Do Not Entitle Him to Habeas Relief.**

The Supreme Court set forth the criteria for an ineffective assistance of counsel claim in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a violation under *Strickland*, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. Thus, the petitioner must establish both (1) deficient performance by counsel and (2) prejudice. Regarding the deficient-performance prong, great deference is given to counsel's performance, and the petitioner has a heavy burden to overcome the strong presumption of effective performance. *Id.* at 689–90; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003). This burden requires Virgil to "establish specific acts or omissions of his counsel which constitute ineffective assistance," to which this Court then "determine[s] whether these acts or omissions were made outside the wide range of professionally competent assistance." *See Coleman*, 318 F.3d at 758 (citing *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000)). To show prejudice, Virgil must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A court need not address both deficient performance and prejudice; if the defendant makes an insufficient showing on one, the inquiry ends. *Strickland*, 466 U.S. at 697.

On habeas review, federal courts apply AEDPA's deferential standard to any aspect of *Strickland* the state court addressed on the merits. *Thomas v. Clements*, 789 F.3d 760, 765–66 (7th Cir. 2015). Thus, where the state court has analyzed the merits of an ineffective assistance of counsel claim, this Court's review is "doubly" deferential and the petitioner must overcome *both* *Strickland*'s and AEDPA's highly deferential standards. *Harrington*, 562 U.S. at 105. In this context, "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Virgil's first claims that his trial counsel was ineffective in failing to object when the jury was provided a copy of the original stipulation containing the word "every" during deliberations. (ECF No. 1 at 6–7.) In the state court, Virgil argued that counsel was ineffective for failing to object to the inclusion of the stipulation in the jury instructions because, according to Virgil, it was a new and separate stipulation, and he had not agreed to its terms. (ECF No. 13-3 at 6.) The state court rejected Virgil's argument, concluding that the stipulation provided to the jury was simply a reprint of the stipulation Virgil had both agreed to and signed and thus counsel was not deficient for failing to object to its inclusion. (*Id.*) On habeas, Virgil tries to reframe his claim by arguing that counsel was ineffective for failing to object when the trial court provided the original stipulation -- which contained the word "every" -- to the jury during deliberations.

Virgil's effort to change the basis for this claim precludes this Court from granting relief. As he presents it now, this is simply not the claim that Virgil presented to the Wisconsin Court of Appeals. Accordingly, this Court cannot consider it as a basis for habeas relief. *See* 28 U.S.C. §2254(b)(1)(A); *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009) ("[Petitioner] cannot argue one theory to the state courts and another theory, based on different facts, to the federal court."). Virgil offers no argument for believing the state court's ruling on the claim that he did raise was wrong. And, either way, he is not entitled to habeas relief. He has not shown that the original version of the stipulation was actually provided to the jury. And if the earlier version (which he had signed) was inadvertently provided to the jury, he has not shown that it would have prejudiced him. The mere inclusion of the word "every" in the initial stipulation would not have reasonably conveyed to the jury that he had been indicted separately on each date between May 6, 2017 and March 15, 2018. The stipulation was accurate in both forms. Accordingly, trial counsel could not have been ineffective for failing to object to the original stipulation being provided to the jury during deliberations.

Virgil's second ineffective assistance claim faults his trial counsel for failing to impeach Officer Young concerning the service of the TRO on Virgil. (ECF No. 1 at 7.) Virgil appears to believe that he was never "properly" served with the TRO because the officer who served him, Officer Inman, served him with a copy of the document that came from the victim, J.B., rather than an original version from the court clerk. (ECF No. 35 at 4–5 (citing Wis. Stat. §813.123(8)(a)).) Based on this premise, Virgil insists his counsel should have impeached Officer Young concerning Officer Inman's service of the TRO papers on Virgil. This ground fails for

several reasons. First and foremost, Virgil did not raise this argument in the state courts. The record shows that Virgil made several arguments relating to the service of the TRO during his state court appeal, and the Wisconsin Court of Appeals rejected them all. None of the arguments concerned the impeachment of Officer Young related to service. Virgil's failure to present this issue to the state court precludes this Court from considering it as a basis for habeas relief. *See* 28 U.S.C. §2254(b)(1)(A). Moreover, to the extent Virgil maintains that state law required the officers to serve an original copy of the TRO from the clerk, rather than a copy received from the victim (a dubious proposition), this argument cannot form the basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law." (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))).

Virgil's third ineffective assistance claim is based on trial counsel's failure to object to the admission of text and Facebook messages that Virgil sent to J.B. (ECF No. 1 at 8.) Virgil contends that these messages constituted "other acts evidence" and were inadmissible under state evidence law. (*Id.*) The Wisconsin Court of Appeals considered and rejected this argument, noting that Virgil sent the messages while he was prohibited from doing so by the TRO and the injunction, and thus the messages were direct evidence of the charged offenses. (ECF No. 13-3 at 8.) Because the evidence was properly admitted, the court of appeals concluded that Virgil's counsel could not have acted deficiently in failing to object. (*Id.*)

Virgil attempts to secure habeas relief on this ground fails for two reasons. First, his challenge is based on a state court's evidentiary ruling, but the admissibility of evidence is a state law issue that cannot be raise on federal habeas, even under the guise of an ineffective assistance claim. *See Rogers v. Wells*, 96 F.4th 1006, 1012 (7th Cir. 2024) (citing *Kimbrough v. Neal*, 941 F.3d 879, 882 (7th Cir. 2019)) ("Where the state court has ruled that trial counsel was not ineffective because a state law argument would have failed, that state law ruling is unassailable on habeas, even if it is couched as an ineffective assistance of counsel claim."). Second, the state court's evidentiary ruling was correct; the text and Facebook messages were direct evidence of Virgil's violation of the underlying orders. Accordingly, Virgil has not shown he is entitled to habeas relief on Ground Three.

Virgil's fourth ineffective assistance claim is based on counsel's failure to object to the admission of an affidavit of service showing that Virgil was served with the TRO on December 27, 2017. (ECF No. 1 at 9.) Virgil appears to be arguing that trial counsel should have subpoenaed

the officer who served the TRO -- Officer Inman -- to testify about service. (ECF No. 35 at 13.) The Wisconsin Court of Appeals rejected Virgil's similar arguments that counsel was ineffective in failing to object to Officer Young's testimony concerning service and his authentication of the affidavit of service. (ECF No. 13-3 at 7.) This claim again appears to be premised on Virgil's mistaken belief that service was improper because Officer Inman served him with a copy of the TRO obtained from J.B., rather than the copy forwarded to the sheriff by the clerk of court. The Court has already explained that Virgil cannot obtain habeas relief by alleging a violation of state law. Virgil does not contend that he was not served with the TRO or that Officer Young didn't personally witness its service. And, as the state court explained, Officer Young testified that he was physically present when Officer Inman served Virgil with the TRO and thus had personal knowledge of service. (ECF No. 13-3 at 7–8.) The state court's rejection of this claim was therefore both reasonable and correct.

## II. The Wisconsin Court of Appeals Reasonably Concluded That Sufficient Evidence Was Presented to Convict Virgil.

Virgil's fifth ground argues that his convictions for felony bail jumping and knowingly violating a domestic abuse injunction (five counts of each) were not supported by sufficient evidence and thus his due process rights were violated. (ECF No. 1 at 10.) A conviction violates due process when it is based on evidence that is insufficient "to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). The Wisconsin Court of Appeals rejected Virgil's claim, noting that the stipulation signed by the parties satisfied the first two elements of bail jumping and there was sufficient evidence presented at trial to show that Virgil violated the terms of the TRO and injunction by constantly contacting and threatening J.B. (ECF No. 13-3 at 10.)

Virgil has not shown that the state court's ruling on the sufficiency of the evidence against him was an unreasonable application of established precedent. To the contrary, the state court's analysis was again correct. Virgil's sufficiency of the evidence arguments are largely predicated on his mistaken belief that the TRO and notice of injunction hearing that Officer Inman served on him was invalid. (*See* ECF No. 35 at 19.) The Court has already explained why that contention is incorrect. Nothing about the service of the TRO or the evidence admitted at Virgil's trial concerning that service violated his due process rights.

In his briefing, Virgil offers three new due process arguments, contending that the State fabricated evidence against him, he's actually innocent, and the State committed a *Brady* violation. (ECF No. 35 at 25–37.) Respondent correctly notes that these claims were not raised before the state courts or in Virgil's petition and are therefore not properly before the Court. (ECF No. 38 at 18); *see also Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004). They fail for that reason alone. Moreover, each of these additional claims is again premised on the same mistaken assumption that the TRO was not properly served on him. They fail for that reason too.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitution right. *See* 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The Court declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition on the merits.

## CONCLUSION

For the reasons explained above,

**IT IS HEREBY ORDERED** that Virgil's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner, *Slack*, 529 U.S. at 484.

Dated at Milwaukee, Wisconsin on May 12, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge